J-A03016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DMITRY ZAGURULIKO | : | |
| | : | |
| Appellant | : | No. 419 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 13, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004190-2021

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: MARCH 4, 2024**

Dmitry Zagorulko[1] appeals from the judgment of sentence imposed after he was convicted of driving under the influence (DUI) of alcohol.[2]  He challenges the denial of his motion to suppress evidence.  We affirm.

At 10:00 p.m. on January 1, 2020, Zagorulko rear-ended a bus that had stopped at a railroad crossing.   Jefferson Hills Police Officer John Haas drove to the scene.  Officer Haas' dashboard camera recorded what happened next.

Officer Haas first spoke with the bus driver, who said Zagorulko's "English isn't that great."  Officer Haas then questioned Zagorulko, who was still in his driver's seat.  In response, Zagorulko said where he was coming from and explained what happened.  Officer Haas asked Zagorulko if he had

_____

[1] Zagorulko's surname is spelled Zaguruliko in the docket.  At the suppression hearing, he provided the spelling that is used in the body of this memorandum.

[2] 75 Pa.C.S.A. §§ 3802(c), 3802(a)(1).

been drinking—Zagorulko insisted that he had not, even while Officer Haas kept asking. Officer Haas asked for Zagorulko's driver's license; Zagorulko, who is from Russia, handed the officer an international driving permit and answered the officer's question about why he did not have a Pennsylvania driver's license.

Officer Haas then asked Zagorulko to step out of his car. For virtually every command Officer Haas gave, Zagorulko did not move until Officer Haas gestured or touched him to show him what to do. Officer Haas had to beckon for Zagorulko to exit the car, point for him to walk to the police vehicle, and touch Zagorulko's shoulder to turn him around. Zagorulko continued to deny having anything to drink that night. Officer Haas then asked him whose car he was driving, and he answered. When Officer Haas told Zagorulko to go sit on the side of the road, Zagorulko did not move until Officer Haas gestured and guided him. Zagorulko answered Officer Haas' questions about his name and background. He retrieved his insurance card as directed.

Zagorulko performed poorly on field sobriety tests. Notably, he acted consistently with the officers' physical demonstrations but not their words. For example, for the walk-and-turn test, Officer Haas told Zagorulko to take "nine" steps but demonstrated three. Zagorulko stumbled through only three steps. Even after another officer held up nine fingers, Zagorulko took only three steps. When Officer Haas explained the one-leg-stand test, Zagorulko mirrored him, even when Officer Haas said not to start until directed.

Port Authority Detective Cory Adelsberger, who arrived during the field sobriety tests, arrested Zagorulko. Zagorulko continued to respond to police questions. Detective Adelsberger asked Zagorulko if he would be willing to go to the hospital for a blood test; Zagorulko agreed. Detective Adelsberger read a DL-26 form to Zagorulko. Zagorulko signed the form to agree to a blood test. The blood test revealed a high rate of alcohol in Zagorulko's blood.

Detective Adelsberger charged Zagorulko with DUI. The case proceeded to court. Because there was no preliminary hearing transcript, Zagorulko petitioned for a writ of *habeas corpus*. The trial court held a *habeas corpus* hearing on March 28, 2022. Officer Haas testified that he was able to communicate with Zagorulko in English and felt Zagorulko understood his questions. N.T., Habeas, 3/28/22, at 10. Officer Zagorulko explained that based on his interactions with Zagorulko, he did not believe that he needed an interpreter. *Id.* at 16–17. Likewise, Detective Adelsberger testified that he could tell that Zagorulko understood when he read the DL-26 form and did not need an interpreter. *Id.* at 19. The trial court found that the Commonwealth had established a *prima facie* case. The court denied Zagorulko's petition for a writ of *habeas corpus*.

Zagorulko then moved to suppress the evidence from his blood test. The trial court held a suppression hearing on June 9, 2022, where the parties stipulated to the transcript from the *habeas corpus* hearing. N.T., 6/9/[22], at 6. The Commonwealth presented both officers' testimony and introduced the dash cam video into evidence. Officer Haas and Detective Adelsberger

testified that they thought Zagorulko could understand them well enough not to need an interpreter. *Id.* at 14, 29, 33. Officer Haas, who is experienced in DUI investigations, opined that Zagorulko's difficulty following directions on the field sobriety tests was due to intoxication, not a language barrier. *Id.* at 15. Zagorulko testified (through an interpreter) about his limited knowledge of English; he rated his English at the time of the incident as a three out of ten. *Id.* at 35–36. He said that he understood the officers with difficulty. *Id.* at 37. Zagorulko explained that he signed the DL-26 form because "it's better to agree than not to agree" and was "the right thing to do." *Id.*

Ruling on the record, the court found that Zagorulko understood English in the officers' statements and on the DL-26 form. *Id.* at 56–57. The court concluded that Zagorulko had given valid consent for a blood test. Therefore, the court denied Zagorulko's motion to suppress.

On March 13, 2013, this case proceeded to a stipulated non-jury trial. The trial court found Zagorulko guilty of two counts of DUI. The court sentenced Zagorulko to probation with restrictive conditions.

Zagorulko timely appealed. Zagorulko and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Zagorulko presents the following issue for review:

> Whether the trial court erred by denying [Zagorulko's] motion to suppress his BAC results where his minimal knowledge of English created a language barrier that was so significant that it prevented him from providing valid consent to the blood draw?

Zagorulko's Brief at 5.

This Court reviews a denial of suppression for whether the record supports the facts as the suppression court found and whether the conclusions of law drawn from those facts are correct. ***Commonwealth v. Williams***, 305 A.3d 89, 93 (Pa. Super. 2023) (citation omitted). "It is the sole province of the suppression court to weigh the credibility of witnesses, and the suppression court judge is entitled to believe all, part, or none of the evidence presented." ***Id.*** (citing ***Commonwealth v. Blasioli***, 685 A.2d 151, 157 (Pa. Super. 1996)) (punctuation altered).

Zagorulko argues that the totality of the circumstances does not support that his consent to the blood test was valid. He contends that his decision to sign the DL-26 form and agree to a blood draw was not knowing, intelligent, or voluntary based on the substantial language barrier, as shown on the video.

The Commonwealth counters that Zagorulko was able to consent to have his blood drawn. The Commonwealth notes different portions of the video that support Zagorulko's proficiency with English.

Both parties address ***Commonwealth v. Carmenates***, 266 A.3d 1117 (Pa. Super. 2021). In that case, a police officer pulled over a driver who spoke only Spanish. ***Id.*** at 1120. Rather than get an interpreter or use a consent form in Spanish, the officer used a cell phone application to translate for the driver, including getting his consent to "see" his luggage. ***Id.*** at 1121. The suppression court granted the driver's motion to suppress drugs found in the luggage, and this Court affirmed. The record supported the suppression

court's findings about the circumstances of the stop and the language barrier, which rendered the driver's consent invalid. *Id.* at 1127.

Here, the suppression court suggests that Zagorulko's claim fails because the defense stipulated to the transcript from the *habeas corpus* hearing, where both witnesses denied any language barrier. Suppression Court Opinion, 5/11/23, at 3–4. The court also notes testimony from the suppression hearing, where Officer Haas explained that he did not get an interpreter because he thought Zagorulko understood him. *Id.* at 4–5. The suppression court states that it found credible both officers' testimony that Zagorulko understood what was happening. *Id.* at 5.

As in *Carmenates*, the record supports the suppression court's findings. The video and the relevant testimony reflect that Zagorulko understood English well enough to answer questions about what happened. Admittedly, once Zagorulko was out of his car, he obeyed police commands only when the officers physically gestured or touched him. However, as Officer Haas opined, this was consistent with intoxication, not a language barrier. The suppression court was free to accept this explanation. *Williams*, 305 A.3d at 93.[3]

Because we accept the suppression court's findings about Zagorulko's English comprehension, we conclude that Zagorulko gave valid consent to a

---

[3] The suppression court was not **required** to accept the parties' stipulation of the testimony from the *habeas corpus* hearing. *See Commonwealth v. Perrin*, 291 A.3d 337, 346 (Pa. 2023). Here, however, where the same jurist presided over both proceedings, the court acted well within its discretion by using the officers' earlier testimony in its analysis.

blood draw. Effective consent depends on the circumstances under which it is given, including these considerations:

> 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Miller*, 186 A.3d 448, 451 (Pa. Super. 2018) (quoting the factors articulated in *Commonwealth v. Cleckley*, 738 A.2d 427, 433 n.7 (Pa. 1999)). Here, although Zagorulko had been arrested, the totality of the circumstances—including Zagorulko's grasp of English—tend to show that his consent was knowing, intelligent, and voluntary. *Id.* at 452. In fact, Zagorulko testified that he signed the DL-26 because "it was the right thing to do," not because he was coerced or did not understand it. N.T., 6/9/[22], at 37. Therefore, the suppression court properly denied Zagorulko's motion to suppress, and we affirm Zagorulko's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 3/4/2024